UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES B., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 19-7115-SP <br><br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On August 15, 2019, plaintiff James B. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). The parties have fully briefed the issue in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") properly determined that plaintiff did not suffer from a severe

1

impairment at step two. Memorandum in Support of Complaint ("P. Mem.") at 3-9; *see* Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.) at 1-6.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly determined that plaintiff did not suffer from a severe impairment at step two. The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 25 years old on June 25, 2008, the alleged disability onset date. AR at 64. He has a high school diploma and no past relevant work. *Id.* at 41, 61.

On December 31, 2015, plaintiff filed an application for SSI, alleging he was unable to work because of severe headaches, migraines, depression, and anxiety. *Id.* at 64-65. The Commissioner denied plaintiff's application initially on June 9, 2016, after which he filed a request for a hearing. *Id.* at 64-73, 81.

Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ on January 4, 2018. *Id*. at 41-60. The ALJ also heard testimony from Heidi Paul, a vocational expert. *Id*. at 60-62. On May 30, 2018, the ALJ denied plaintiff's claims for benefits. *Id*. at 27-33.

Applying the well-known five-step sequential evaluation process, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since December 31, 2015, the application date. *Id*. at 29.

At step two, the ALJ found that plaintiff suffered from the following medically determinable impairments: depression, and headaches or migraines. *Id.* But the ALJ further found the impairments, whether individually or in combination, were not severe, because they did not significantly limit plaintiff's

ability to perform basic work-related activities for 12 consecutive months. *Id.* Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 29-33.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-6. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## **DISCUSSION**

Plaintiff argues the ALJ's step two finding that plaintiff did not suffer from any severe impairment is inconsistent with the clinical notes and objective findings of record. *See* P. Mem. at 3-9. Specifically, plaintiff argues the ALJ failed to properly consider the treating record in determining that plaintiff did not have any severe impairment. *Id.* Defendant argues substantial evidence supports the ALJ's decision that plaintiff did not have a severe impairment, and therefore the ALJ did not err. *See* D. Mem. at 1-6.

At step two, the Commissioner considers the severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii).[1] "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (citation and quotation marks omitted). Nonetheless, "[t]he claimant [still] carries the initial burden of proving a disability." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

To establish a medically determinable impairment, it must be supported by objective medical evidence, not only the plaintiff's statements. *See* 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical

---

[1] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

4

evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005). "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ determined that plaintiff suffered from depression, and headaches or migraines. AR at 29. But the ALJ found that plaintiff's physical and mental impairments were not severe, because they did not significantly limit his ability to perform basic work activities for 12 consecutive months. *Id.* In making this determination, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluation mental disorders," which are known as the "paragraph B" criteria. *Id.* at 33. The ALJ found plaintiff had no more than mild limitations in understanding, remembering, or applying information, interacting with others, maintaining concentration, persistence, or pace, and adapting or managing oneself. *Id.* Consequently, the ALJ found plaintiff's mental impairment was not severe. *Id.*

In reaching the determination that plaintiff's physical and mental impairments were not severe, the ALJ considered all of the evidence, including plaintiff's testimony, the treatment records, and the medical opinions. *See id*. at 29-33. The ALJ discounted plaintiff's subjective testimony because it was not entirely consistent with the medical evidence and other evidence of record, including plaintiff's activities of daily living. *Id.* at 31; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (listing factors to consider in a credibility analysis). Plaintiff does not contest the ALJ's findings with respect to his testimony. But plaintiff does challenge the ALJ's consideration of the

5

objective medical evidence, namely, plaintiff argues the ALJ failed to properly consider the treating record in this case. *See* P. Mem. at 6-9.

A. **The Medical Opinions and Records**

Plaintiff submitted medical records from the Los Angeles County Department of Mental Health as evidence of his mental impairment. *See* AR at 253-314. From 2016 to 2017, plaintiff saw various health care providers related to his mental health impairment. With respect to plaintiff's physical impairments, plaintiff was treated by Dr. Mohsen Ali, a neurologist. Consultative examiners Dr. Gabriel Fabella and Dr. Reynaldo Abejuela examined plaintiff and provided opinions regarding the severity of plaintiff's physical and mental impairments. Non-examining state agency medical consultants Dr. E. Christian and Dr. Jacob Tendler also assessed plaintiff regarding the severity of his physical and mental impairments.

    1. **Los Angeles County Department of Mental Health**

Plaintiff's treatment records from the Los Angeles County Department of Mental Health indicate that he began receiving mental health treatment in 2016 to address his ongoing depression and anxiety. *See* AR at 253-314. Plaintiff was diagnosed with major depressive disorder, post-traumatic stress disorder (PTSD), obsessive compulsive disorder (OCD), gender dysphoria, and eating disorder. *Id.* at 266, 268-69, 273, 275-76, 283, 285-86, 294, 296-97, 309. Plaintiff was prescribed with Prozac and Prazosin for his depression, PTSD, and OCD, which he responded favorably to and did not experience any adverse side effects. *Id.* at 264, 266-67, 269, 273-74, 276, 278-79, 283-86, 294-96, 302.

In August 2017, during an appointment with his psychiatrist, Dr. Anna Xiao, plaintiff reported that he was doing okay generally, and that he was doing well and compliant with his medication. *Id.* at 264. Plaintiff also reported an improvement in his social skills and better management of his time and anger, and he appeared

cooperative and pleasant during the appointment. *Id.* Additionally, plaintiff's mental status examinations indicated that he is generally within normal limits. *Id.* at 241-44, 268, 275, 285, 296, 308-09.

### 2. Dr. Mohsen Ali

Plaintiff's treatment records also indicate that he received treatment for his headaches from Dr. Mohsen Ali, a neurologist. *See id.* at 218-28, 247-52. Dr. Ali reported that plaintiff's symptoms were stable with medication. *Id.* at 219-23, 225-26, 248-52. Plaintiff also indicated to another physician that he had constant crying and depression until he saw the neurologist and was prescribed with Neurontin, after which his headaches were reduced significantly and his mood improved. *Id.* at 266. Dr. Ali subsequently prescribed plaintiff Botox injections, which significantly improved his headaches and migraines. *Id.* at 46-48, 50, 53, 248. An MRI of plaintiff's brain also indicated normal functioning. *Id.* at 224.

### 3. Dr. Gabriel Fabella and Dr. Reynaldo Abejuela

On May 2, 2016, Dr. Gabriel Fabella, an internal medicine consultative examiner, interviewed, observed, and examined plaintiff regarding his migraines. *Id.* at 231-35. Plaintiff reported that he probably had migraines all his life, but they got worse in 2006, and the headaches last several hours or the whole day. *Id.* at 231-32. Dr. Fabella conducted a physical examination of plaintiff and diagnosed him with headaches, but reported entirely normal findings. *Id.* at 235. Based on the physical examination and his observations, Dr. Fabella also found no impairment related to plaintiff's physical limitations. *Id.*

On May 17, 2016, Dr. Reynaldo Abejuela, a psychiatric consultative examiner, completed a psychiatric evaluation of plaintiff. *Id.* at 238-45. Dr. Abejuela reported that plaintiff is generally within normal limits besides exhibiting a mildly depressed and mildly anxious mood. *Id.* at 241-42. Based on the mental examination, Dr. Abejuela diagnosed plaintiff with depressive disorder, not

otherwise specified, with mild anxiety. *Id.* at 242. Plaintiff reported that he attended the appointment by public transit without any assistance. *Id.* Plaintiff also stated that his physical problems include headaches and migraines, and he has depression and anxiety with feelings of loneliness and nervousness. *Id.* Plaintiff indicated that he lives with his aunt on and off, and his changes of activities are described as "less drive and desire to interact with people, selective to go out in public." *Id.* at 243. Additional reported symptoms include some problems with sleep, appetite and weight, and concentration and memory. *Id.*

Dr. Abejuela noted the objective findings in the mental status examination revealed mild depression and mild anxiety, but his reasoning and comprehension remain intact and his cognitive functioning was within normal limits. *Id.* On formal testing, plaintiff recalled three out of three objects after three and five minutes, and was able to do simple math. *Id.* Based on the history provided by plaintiff and the mental status examination, Dr. Abejuela assessed that plaintiff's occupational and social functioning impairment is mild. *Id.* Overall, Dr. Abejuela opined that plaintiff has, at most, mild mental functional limitations. *Id.* at 243-244.

### 4. State Agency Physicians

On May 31, 2016, Dr. E. Christian, a state agency medical/psychological consultant, reviewed plaintiff's medical records, and determined that plaintiff does not have any physical limitations. *Id.* at 68. On June 3, 2016, Dr. Jacob Tendler, a state agency medical/psychological consultant, reviewed plaintiff's records and completed a Psychiatric Review Technique assessment for plaintiff. *Id.* at 70. Dr. Tendler found that plaintiff did not have a severe mental impairment, because plaintiff had only mild restrictions in the activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace, and experienced no repeated episodes of decompensation. *Id.*

B. **The ALJ Did Not Err at Step Two**

At step two, the ALJ found that plaintiff does not have an impairment or combination of impairments that has significantly limited his ability to perform basic work-related activities for 12 consecutive months, and therefore plaintiff does not have a severe impairment or combination of impairments. *Id.* at 29. In reaching this determination, the ALJ gave great weight to the opinions of consultative examiners Dr. Fabella and Dr. Abejuela on the ground that their opinions were consistent with the ALJ's findings and medical evidence, including plaintiff's activities of daily living. *Id.* at 31-32. The ALJ also gave great weight to the state agency consultants, finding that their opinions were well supported by the objective medical evidence and consistent with the record and plaintiff's activities of daily living. *Id.* at 32.

Plaintiff argues that in reaching the determination that plaintiff did not suffer any severe impairments, the ALJ failed to consider plaintiff's treating psychological records, which supported ongoing treatment from acceptable medical sources since 2015. *See id.* at 6-9. But contrary to plaintiff's argument, the ALJ properly considered plaintiff's treatment records from the Los Angeles County Department of Mental Health. *See* AR at 32. Indeed, the ALJ acknowledged that the treatment records indicated that plaintiff was diagnosed with major depressive disorder, PTSD, and OCD. *Id.* While plaintiff received treatment for his mental impairment, that is insufficient by itself to show that his impairment was severe. Further, the Los Angeles County Department of Mental Health did not opine as to any functional limitations plaintiff might have. *See id.* at 253-314. Rather, as the ALJ correctly noted, the treatment records showed that plaintiff was responding well to the conservative treatment of medication, such as Prozac and Prazosin, which helped significantly alleviate his symptoms. *See id.* at 32, 52-53, 264-267, 269, 274, 276, 278-79, 283-86, 294-95, 302; *Parra v. Astrue*,

481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits").

The ALJ also considered plaintiff's mental status examinations, which revealed that he was generally within normal limits. *Id.* at 32, 244, 268, 275, 285, 296, 308-09. Additionally, in August 2017, the treatment records indicated that plaintiff was doing well and compliant with his medication, and his social skills, time management, and anger management had improved. *Id.* at 264. Plaintiff also appeared cooperative and pleasant. *Id.* As such, the ALJ properly considered the Department of Mental Health records, which are devoid of objective medical findings or opinions as to functional limitations that would suggest plaintiff had a severe mental impairment.

In addition to plaintiff's treatment records, the ALJ also considered the psychiatric consultative examination conducted by Dr. Reynaldo Abejuela in determining whether plaintiff's mental impairment was severe. *See id.* at 31-32, 238-249. Dr. Abejuela reported that the objective findings in the mental status examination revealed mild depression and mild anxiety, but plaintiff's reasoning and comprehension were intact and his cognitive functioning was within normal limits. *Id.* at 241-243. Dr. Abejuela then opined that plaintiff has, at most, mild mental functional limitations. *Id.* at 243-244. The state agency physician Dr. Tendler also determined that plaintiff did not have a severe mental impairment, because he had only mild restrictions in the activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. *Id.* at 68-70. After reviewing plaintiff's testimony and the evidence described above, the ALJ found that plaintiff's mental impairment was not severe since it caused no

1  more than mild limitations in his ability to understand, remember, or apply
2  information, interact with others, maintain concentration, persistence, or pace, and
3  adapt or manage oneself. *Id.* at 33. The ALJ thus properly considered the effect of
4  plaintiff's mental impairment on his ability to function, and the determination that
5  his mental impairment was not severe was supported by substantial evidence.

6        Plaintiff similarly argues the ALJ failed to properly consider the effects of
7  his headaches and migraines on his ability to function (*see* Reply at 3-4), but the
8  record indicates otherwise. *See* AR at 30-33. The ALJ considered plaintiff's
9  testimony that he experiences headaches every other day and migraines twice a
10 week, and that he initially took Excedrin to manage his headaches until it no longer
11 alleviated his symptoms. *Id.* at 30, 46-48. The neurologist's progress notes
12 indicate that plaintiff sought treatment for his headaches, but it was noted that
13 plaintiff was stable with treatment of medication. *See id.* at 219-224, 225-226,
14 248-252. While plaintiff claims he downplayed his symptoms up until six months
15 prior to the hearing, plaintiff also testified that the neurologist prescribed him with
16 Botox, which significantly improved his headaches and migraines. *Id.* at 46-48,
17 50, 53, 248. Plaintiff argues, however, that even with Botox he experienced two
18 migraines a week, which precludes the possibility of competitive work. *See* Reply
19 at 3. But plaintiff fails to provide any evidence that he would need to be absent
20 from work twice a week due to his migraines, and the fact that he still has
21 migraines is insufficient proof that the impairment is severe or disabling. *See*
22 *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an
23 impairment is insufficient proof of a disability"). To the contrary, plaintiff testified
24 that he was able to walk 20 miles in a week and be more active since receiving
25 Botox. *See* AR at 53-54. Further, Dr. Fabella's physical examination of plaintiff
26 revealed that he had no physical impairments and no physical functional
27 limitations, and an MRI of plaintiff's brain also indicated normal functioning. *Id.*
28

at 31, 233-235, 224. As such, the ALJ properly considered the effect of plaintiff's headaches and migraines on his ability to function, and the determination that plaintiff's physical impairments were not severe was consistent with plaintiff's testimony and the objective medical evidence.

In reviewing the record as a whole, the court finds the ALJ's determination that plaintiff does not have a severe impairment or combination of impairments was supported by substantial evidence.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 29, 2021

SHERI PYM
United States Magistrate Judge